STATE OF WEST VIRGINIA

FILED

**March 5, 2025**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.S.**

**No. 23-349** (Berkeley County 21-JA-260)

**and**

*In re* **E.T.**

**No. 23-354** (Berkeley County 21-JA-259)

## MEMORANDUM DECISION

In these consolidated cases, the petitioner Father D.S. and the petitioner Mother K.T.[1] appeal the Circuit Court of Berkeley County's May 16, 2023 disposition order terminating their parental rights to their respective children, K.S. and E.T.[2] On appeal to this Court, the petitioners argue that the circuit court erred by (1) adjudicating them as abusing and/or neglectful parents; (2) denying their motions for post-adjudicatory improvement periods; and (3) terminating their parental rights.

---

[1] The petitioner D.S. appears by counsel Nancy A. Dalby. The petitioner K.T. appears by counsel Erin Alyse Clark. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James "Jake" Wegman. Because a new Attorney General, John B. McCuskey, took office while this appeal was pending, his name has been substituted as counsel. The non-offending Mother J.M. appears by counsel Elizabeth Layne Diehl, and the non-offending Father W.T. appears by counsel Jared M. Adams. Counsel Tracy Weese appears as the guardian ad litem for the children, K.S. and E.T. Pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] In cases involving sensitive facts, we use initials, rather than the parties' full names. *See generally* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children).

1

This Court has carefully considered the briefs and oral arguments of the parties, the submitted record, and the pertinent authorities. Upon review, we agree with the circuit court's order terminating the petitioners' parental rights. Accordingly, we affirm the circuit court's order entered on May 16, 2023. Because there is no substantial question of law, a memorandum decision is appropriate pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

On or about November 16, 2021, the Department of Human Services ("DHS"), filed an abuse and neglect petition against the petitioners alleging that, among other things, their use of cannabis in the presence of their children impaired their ability to parent to a degree as to pose an imminent risk to their children's health and safety.[3] At the time, the petitioners were involved in a relationship and lived together, but they did not share any biological children. The petitioner D.S. shared custody of his daughter, K.S., with K.S.'s biological mother, J.M.[4] The petitioner K.T. shared custody of her daughter, E.T., with E.T.'s biological father, W.T. Following the children's forensic interviews at the Children's Advocacy Center ("CAC") where they made additional disclosures about the petitioners' use of cannabis, an amended petition was filed. E.T., who was ten years old at the time of her CAC interview, made numerous disclosures including that her mother had been doing "weed" since E.T. was five or six years old. E.T. further asserted that the petitioner D.S. was growing cannabis in a closet of the home D.S. shared with E.T.'s mother and that both petitioners smoked cannabis while driving with the children in the car. K.S., who was eight years old at the time of her CAC interview, disclosed that both petitioners smoke "weed," and it made her uncomfortable because she was concerned that she would get sick if it "goes in her nose." K.S. also disclosed that her father smoked "weed" while driving. The DHS alleged that the petitioners' cannabis use in the presence of their children compromised their proper parenting skills.

Multiple adjudicatory hearings were held in these consolidated cases. At an adjudicatory hearing on January 20, 2022, the petitioner K.T. stipulated to smoking cannabis in the presence of the children. Importantly, K.T. further stipulated that her use and abuse of drugs had compromised her proper parenting skills and that such impairment posed an imminent risk to E.T.'s health and safety. K.T. also stipulated that E.T. was an

---

[3] Prior to filing the initial abuse and neglect petition, the DHS received a referral alleging that the petitioners were smoking cannabis in the house and around their minor children. On multiple days in November 2021, a child protective services ("CPS") worker met with and/or contacted numerous individuals as part of the investigation into the referral.

[4] In addition to K.S., the proceedings below also involved D.S.'s other biological daughter, O.S. D.S. tendered a relinquishment of his parental rights during the proceedings, and his parental rights to O.S. were terminated. As no appeal has been filed as to that termination, we will focus our analysis on the remaining children, K.S. and E.T.

2

abused and neglected child. Although she stipulated to breaking the law by using cannabis, she also claimed that she and D.S. had been using medical cannabis.

On February 22, 2022, the day prior to the next adjudicatory hearing, the petitioner D.S. filed an answer admitting that: (1) he knowingly and intentionally used and abused cannabis in the presence of his children; (2) his use and abuse of cannabis had compromised his proper parenting skills; (3) his use of cannabis had impaired his parenting skills to a degree as to pose an imminent risk to his children's health or safety; and (4) as a result of his illegal drug use impacting his ability to parent, his children are neglected. During an adjudicatory hearing held on February 23, 2022, D.S. confirmed his desire to admit to the above allegations. During that same hearing, D.S. testified that he was willing to stop using cannabis and find another way to manage his situation. He also admitted to lying during his preliminary hearing when he testified that he did not use cannabis in the presence of the children.

Following the petitioners' admissions, the circuit court adjudicated them as abusing and/or neglectful parents.

Thereafter, the petitioners sought post-adjudicatory improvement periods. At the conclusion of a hearing held on March 10, 2022, the circuit court informed the petitioners' counsel that it would consider the petitioners' requests for improvement periods, but it would not permit cannabis use during the case. At a hearing on the petitioners' motions for post-adjudicatory improvement periods on May 16, 2022, the circuit court heard testimony from multiple witnesses, including the petitioners. At that time, D.S. was incarcerated for a violation of a family protection order from Maryland. He testified that he had begun to participate in services by "haphazardly" drug screening and meeting with the individual who would be administering the parenting classes. D.S. also confirmed that he had been unable to attend some of the parenting classes due to his incarceration. D.S. had not yet scheduled his psychological evaluation and had not applied for a medical cannabis card in West Virginia. D.S. was also cross-examined about his social media posts that referenced the underlying proceeding, and his claim that he did not know that the proceedings are confidential. Despite previously indicating that he was willing to quit smoking or otherwise using cannabis in order to get an improvement period, D.S. testified at the May 16, 2022 hearing that he felt that cannabis was a vital part of his medication routine.

During the May 16, 2022 hearing, K.T. testified that she believed she was only supposed to drug screen for two weeks, and after learning she was supposed to continue, she screened as much as her schedule allowed. She had attended two parenting classes. Despite her prior testimony that she had stopped using cannabis, K.T. testified that she had obtained a certificate for medical cannabis in West Virginia and had since started using cannabis again. K.T. was aware that the circuit court had previously indicated that cannabis use would not be tolerated during an improvement period. K.T. also testified that if given a choice between her daughter and the petitioner D.S., she would pick herself. K.T. drug

3

screened several times between March 1, 2022 and May 16, 2022, and each of her screens was positive for THC. D.S. screened four times, and each of his screens was positive for THC. In addition, two of his screens were positive for alcohol. By order entered July 8, 2022, the circuit court denied the petitioners' motions for improvement periods after concluding that they had failed to demonstrate that they were likely to fully participate in such improvement periods.

The disposition hearing began on September 23, 2022. The DHS presented the testimony of the CPS worker and the petitioners, and the petitioners presented testimony from multiple witnesses. The evidence showed that the petitioners had been referred to the Berkeley Day Report Center for services. On the day they reported for intake and treatment planning, both petitioners stated that they did not intend to stop using cannabis. Although both petitioners submitted to drug screens during the pendency of this matter, they failed to consistently screen, and all of their screens were positive for THC.[5] Both petitioners admitted to continued use of cannabis at the initial dispositional hearing, and both petitioners were discharged from parenting classes.

On February 3, 2023, the parties reconvened for a continuation of the dispositional hearing. At that time, the circuit court heard from a licensed psychologist that D.S.'s prognosis was poor due to his lack of insight, failure to accept responsibility and lack of willingness to change. In addition, K.T. had been diagnosed with, among other things, unspecified cannabis-related disorder. Following this hearing, the circuit entered an order terminating the petitioners' parental rights to their respective children.[6] This appeal followed.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Guided by this framework, we will consider the petitioners' arguments.

The petitioners assert that their cases require this Court to consider the lawful use of medical cannabis in the context of abuse and neglect proceedings—specifically, whether the terms and conditions of an improvement period may prohibit the lawful use of medical cannabis. We disagree. Because the issue of the use of medical cannabis permeates the petitioners' assignments of error, we begin our analysis by noting that at the inception of this case, neither petitioner was using medical cannabis pursuant to the West Virginia Medical Cannabis Act ("WVMCA" or "Cannabis Act") West Virginia Code § 16A-1-1 to -16-1. In fact, at the time the petition for abuse and neglect was filed, petitioners were

---

[5] In addition, the petitioners had not screened for over two months prior to the dispositional hearing.

[6] The circuit court also denied the petitioners' motions for post-dispositional improvement periods.

illegally using cannabis, and they stipulated to such illegal use. Further, the petitioners admitted that their use of cannabis had impaired their parenting skills to a degree as to pose an imminent risk to their children's health or safety. For reasons that will be discussed in more detail *infra*, the petitioners' insistence that this is a medical cannabis case is a mischaracterization of the evidence presented to the circuit court.

### *Adjudication*

Both petitioners challenge the adjudication in their respective cases. D.S. argues that the circuit court lacked sufficient evidence to find that he abused or neglected his daughter, K.S. Despite D.S.'s assertions to the contrary, his own admissions clearly reveal that the circuit court had ample evidence to conclude that he had abused and neglected K.S. At an adjudicatory hearing held on February 23, 2022, D.S. signed a verified answer in court admitting that: (1) K.S. was an abused and neglected child inasmuch as he had knowingly and intentionally used and abused cannabis in the presence of K.S.; (2) his use and abuse of drugs had compromised his parenting skills; (3) his abuse of alcohol or drugs impaired his parenting skills to a degree as to pose an imminent risk to K.S.'s health or safety; and (4) as a result of his illegal drug use impacting his ability to parent, K.S. is a neglected child. These four admissions specifically referenced paragraph numbers 17-20 of the petition, and in response to questions from his own counsel, D.S. testified that he was willing to make the admissions and "not require the state to move forward with presenting evidence[.]" The circuit court found that D.S. had knowingly, intelligently and voluntarily waived his right to a contested adjudication. After accepting D.S.'s admissions, the circuit court concluded that D.S.'s use and abuse of cannabis in the presence of K.S. had impaired his proper parenting skills, which resulted in the abuse and neglect of K.S.[7]

K.T. argues that she did not knowingly make admissions or waive her right to an adjudicatory hearing. In addition, K.T. asserts that her admitted conduct did not constitute abuse or neglect and that the circuit court failed to make proper findings during the adjudication process. At an adjudicatory hearing held on January 20, 2022, K.T. made several admissions. Importantly, she admitted that: (1) E.T. was an abused and neglected child inasmuch as she had knowingly and intentionally used and abused cannabis in the presence of E.T.; (2) her use and abuse of drugs had compromised her proper parenting skills; (3) her abuse of alcohol or drugs had impaired her parenting skills to a degree as to pose an imminent risk to E.T.'s health or safety; (4) as a result of her illegal drug use impacting her ability to parent, E.T. is a neglected child; and (5) E.T. is a neglected child inasmuch as E.T.'s physical and mental health were harmed or threatened by a present refusal, failure, and inability to provide E.T. with necessary food, clothing, shelter,

---

[7] D.S. also asserts that the circuit court failed to enter an adjudicatory order with required findings of fact and conclusions of law in his case. We find this assertion to be without merit as the circuit court adjudicated D.S. during the adjudicatory hearing on February 23, 2022, and in an order entered on July 8, 2022.

5

supervision, and medical care, which was not due to lack of financial means. In response to questioning by her counsel, K.T. testified that she was aware that she had the right to a contested adjudicatory hearing, but she desired to waive that right and make the admissions referenced above. She also confirmed that her admissions were voluntary and intentional. Thereafter, the circuit court accepted K.T.'s admissions and adjudicated her as a neglectful parent.

On appeal, the petitioners argue that their admissions were not sufficient to permit the circuit court to conclude that they had abused and/or neglected their children. Specifically, D.S. argues that his admission to "abusing and neglecting [K.S.] because he used marijuana and [K.S.] was uncomfortable with his use" does not meet the statutory requirements necessary to conclude that K.S. was an abused or neglected child.[8] D.S. fails to acknowledge, however, that he admitted that his abuse of alcohol or drugs impaired his parenting skills to a degree as to pose an imminent risk to K.S.'s health or safety. As for K.T., although she admits that a "few" of her admissions could be considered neglect, she asserts that, notwithstanding her admissions, the circuit court should have required the DHS to present evidence of abuse and neglect. We find that the petitioners are entitled to no relief as to this assignment of error.

DHS was required to prove that the children, K.S. and E.T., were abused or neglected "based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence." W. Va. Code § 49-4-601(i). "The statute, however, does not specify any particular manner or mode of testimony or evidence by which [DHS] is obligated to meet this burden." Syl. Pt. 3, in part, *In re Christina L.*, 194 W. Va. 446,

---

[8] West Virginia Code § 49-1-201 provides, in pertinent part:

"Abused child" means:

(1) A child whose health or welfare is being harmed or threatened by:

(A)   A parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment;

…

"Neglected child" means a child:

(A)   Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]

6

460 S.E.2d 692 (1995). Rule 26(d) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that "[a]dmissions by a respondent properly contained in an answer … may be admitted into evidence at any stage of the proceedings." At the time the circuit court adjudicated the petitioners, it had before it numerous admissions including that the petitioners' abuse of alcohol or drugs had impaired their parenting skills to a degree as to pose an imminent risk to their children's health or safety. The petitioners' admissions provided compelling evidence that the children were abused and/or neglected.[9]

Given D.S.'s and K.T.'s stipulations, the colloquy with their counsel, and their verified answers, we find no merit to their argument regarding their adjudication.[10] Therefore, the circuit court did not err in adjudicating D.S. and K.T. as abusing and/or neglectful parents following their admissions.[11]

---

[9] We acknowledge that this Court has previously reversed an adjudication in an abuse and neglect matter "for the sole act of smoking marijuana without further evidence that [the] conduct harmed, or was a threat of harm, to [the minor child's] health or welfare." *In re H.W.*, No. 16-0317, 2016 WL 4611241, at *3 (W. Va. September 6, 2016) (memorandum decision). However, any reliance upon *In re H.W.* is misplaced because, unlike the undisputed facts of this case, there was unrebutted testimony that the petitioning parent in *In re H.W.* did not smoke marijuana on a regular basis and did not smoke marijuana while his minor child was in his custody.

[10] To the extent that K.T. seeks to advance an ineffective assistance of counsel claim as part of this assignment of error, we decline to address that argument. This Court has not previously recognized a claim for ineffective assistance of counsel in the context of abuse and neglect matters. *See In Re H.C.*, No. 12-0471, 2012 WL 4838995 (W. Va. September 24, 2012) (memorandum decision) (noting that this Court has never recognized such a claim and even if it had, the petitioner in *H.C.* received effective counsel); *In re J.F.*, No. 12-0097, 2012 WL 4069520 (W. Va. September 7, 2012) (memorandum decision) (declining to recognize a claim for ineffective assistance of counsel in the context of an abuse and neglect case).

[11] As to the petitioners' assertions that their admissions were not sufficient to adjudicate them as abusing and/or neglecting parents and that DHS should have presented evidence, the record reflects that they waived their right to a contested adjudicatory hearing and made admissions that permitted the circuit court to conclude that they had abused and/or neglected their children. Although we do not agree with the petitioners' argument that the circuit court erred in its adjudication, we note that even if it was error, this Court has found that "[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syl. (continued . . .)

### *Post-Adjudicatory Improvement Periods*

Following the petitioners' adjudications, they sought post-adjudicatory improvement periods. At the conclusion of a hearing held on March 10, 2022, the circuit court informed the petitioners' counsel that it would consider the petitioners' requests for improvement periods, but it would not permit cannabis use during any potential improvement period.[12] The parties scheduled a multidisciplinary treatment team meeting to discuss terms of potential improvement periods in an effort to determine whether an agreement could be reached on this issue. The parties were unable to reach an agreement, and on May 16, 2022, the circuit court held a contested hearing on the petitioners' motions for improvement periods.

At the time of the hearing on the motions for post-adjudicatory improvement periods, D.S. was incarcerated for a violation of a family protection order from Maryland. D.S. testified that, prior to his incarceration, he had been "haphazardly" drug screening and had met with the individual who would be administering parenting classes. D.S. had not yet scheduled his psychological evaluation and had not pursued a medical cannabis card in West Virginia. Despite prior indications that he was willing to quit smoking cannabis or otherwise using cannabis in order to get an improvement period, D.S. testified that he felt that cannabis was a vital part of his medication routine.

Regarding K.T., despite her prior testimony that she had stopped using cannabis and her understanding that the circuit court had indicated that cannabis use would not be tolerated on an improvement period, K.T. testified that she had obtained a certificate for medical cannabis from West Virginia and had since started using cannabis again. K.T. also testified that, if given a choice between her daughter and the petitioner D.S., she would pick "herself."

Notably, the petitioners had submitted to some drug testing, and all of their tests were positive for THC. By order entered on July 8, 2022, the circuit court denied the petitioners' motions for improvement periods after concluding that they had failed to demonstrate that they were likely to fully participate in such improvement periods.

With respect to the denial of his motion for a post-adjudicatory improvement period, D.S. asserts that the circuit court's prohibition regarding the use of cannabis as a term of

---

Pt. 1, *Maples v. West Virginia Dept. of Commerce, Div of Parks and Recreation*, 197 W. Va. 318, 475 S.E.2d 410 (1996).

[12] The circuit court's directive was made while the petitioners were submitting to a drug test, but the record reflects that the circuit court asked the petitioners' respective attorneys to make the petitioners aware that the circuit court believed that cannabis use was a "huge part of the problem" and that any improvement period would not permit the use of cannabis.

his improvement period usurped the role of the multidisciplinary team and foreclosed him from proposing a treatment plan that considered the beneficial use of medical cannabis. We reject D.S.'s arguments regarding the use of medical cannabis as it relates to this issue. Contrary to his assertions, D.S. was not legally using medical cannabis in West Virginia at the time he made his request for a post-adjudicatory improvement period and at the time that the circuit court denied his request.[13] In order to lawfully use or possess medical cannabis in West Virginia, D.S. was required to be in possession of a valid identification card issued by West Virginia. *See* W. Va. Code § 16A-3-2. However, even if D.S. had obtained a valid identification card issued by the state of West Virginia, his stipulation that he used cannabis in a manner that posed a risk to the children's safety is fatal to his arguments that the circuit court should have permitted him to use medical cannabis during an improvement period. Therefore, we find that the circuit court did not abuse its discretion by denying D.S. an improvement period.

As noted above, at the May 16, 2022 hearing, K.T. testified that she had obtained a valid identification card for the use of medical cannabis from West Virginia. On appeal, she argues that the circuit court erred and abused its discretion by failing to consider possible improvement period terms that permitted the use of medical cannabis. K.T. describes the theme of this case as follows: "cannabis use, itself, appears to be the offense here." We disagree with this characterization. The offense in these cases is the use of cannabis, medical or otherwise, in the presence of the minor children *that impaired the petitioners' parenting skills to a degree as to pose an imminent risk to their children's safety*. Before the circuit court, K.T. admitted that her use of cannabis had impaired her parenting skills to a degree as to pose an imminent risk to the children's safety, but thereafter, she attempted to distance herself from this admission and argued that she should still have been permitted to use medical cannabis. K.T.'s refusal to acknowledge the impact of her cannabis use on E.T.'s safety is fatal to her argument that the circuit court should have considered improvement period terms that permitted the use of medical cannabis. This Court has held that "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004) (internal citations omitted). Accordingly, the circuit court did not abuse its discretion by denying K.T. an improvement period.

---

[13] The record shows that D.S.'s medical cannabis identification card for West Virginia was not issued until December 7, 2022, which was *after* the initial dispositional hearing occurred.

## *Termination*

The petitioners next argue that the circuit court erred by terminating their parental rights. Both petitioners argue that the circuit court erred by finding that there was no reasonable likelihood that they could substantially correct the conditions of abuse and neglect and by concluding that termination of their parental rights was in the best interest of the children. In response, the DHS asserts that the petitioners' nonconformity with requirements imposed during the pendency of the cases below, including the petitioners' continued use of cannabis throughout the proceedings, resulted in the circuit court properly terminating their parental rights. We agree.

Prior to entering the dispositional order, the circuit court conducted multiple adjudicatory hearings, a hearing regarding the requests for post-adjudicatory improvement periods, and two dispositional hearings. The circuit court heard testimony from numerous lay witnesses, at least three expert witnesses, and the petitioners themselves. The evidence showed that the underlying proceedings began with D.S. lying about his use of cannabis in the presence of the children. At the inception of these consolidated cases, both petitioners were illegally using cannabis as D.S. was improperly relying upon a Maryland issued medical cannabis card and K.T. had no medical cannabis card. The petitioners admitted, among other things, that their cannabis use impaired their parenting skills to a degree that it placed their children at risk of imminent danger. Despite their assertions that they would cease using cannabis, they failed to do so. They sporadically submitted to drug screens and all of their screens were positive for THC. Although they were aware of the circuit court's directive that it would not consider the use of cannabis as a term or condition of an improvement period, they obtained medical cannabis identification cards during the proceedings and refused to stop using cannabis. In addition, D.S. testified that the petitioners were "kicked out of" parenting classes due to their "antics." D.S.'s psychological evaluation indicated that he had a poor prognosis for being successful in participating in services relative to this case and that he did not indicate a willingness to change or to prioritize his parenting to overcome the conditions that had resulted in the underlying proceedings.[14] K.S.'s psychological evaluation indicated that she had a fair

---

[14] D.S. was also evaluated by Psychologist Donald Patchell who opined that D.S. did not have substance use disorder. Due to the lack of testing performed by Dr. Patchell, his reliance on information provided by D.S., and Dr. Patchell being unaware of the admissions made by D.S., the circuit court found Dr. Patchell's testimony less reliable than another psychologist who conducted an evaluation of D.S. "[I]n the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily B.*, 208 W. Va. 325, 339, 540 S.E.2d 542, 556 (2000). We decline to disturb the circuit court's finding in this regard as "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and (continued . . .)

prognosis for overcoming the conditions that led to the underlying proceedings, but only if she prioritized her child's interests over her own. However, she explicitly stated that, given the choice, she would pick "herself."

Based on the above evidence, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that it was in the best interest of the children to terminate the petitioners' parental rights. This Court has held that,

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code, [49-4-604 (2020)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code, [49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). West Virginia Code § 49-4-604(c)(6) authorizes circuit courts to

> [up]on a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency.

Under West Virginia Code § 49-4-604(d),

> "No reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help. Those conditions exist in the following circumstances, which are not exclusive:
>
> (1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the

will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) (internal citations omitted).

extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through [with] the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning; [and]

(2) The abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child[.]

The petitioners' acknowledged that the use of cannabis impaired their ability to parent to a degree that it posed an imminent risk to their children's health and safety. Despite their admissions, the petitioners continued to use cannabis throughout the proceedings and did not respond to the services offered to them. Accordingly, the circuit court did not err in finding no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of the petitioners' parental rights was in the best interests of the children.

Finally, K.T. asserts that the circuit court erred by not granting a less restrictive alternative disposition pursuant to West Virginia Code § 49-4-604, which provides dispositional alternatives that may be employed in abuse and neglect proceedings. Essentially, the argument she advances is that the circuit court should have granted a "section 5" disposition.[15] A section 5 disposition allows a circuit court to place a child in the *temporary* custody of the DHS while the child is considered for a legal guardianship, permanent placement with a fit relative, or an alternative planned permanent arrangement if the child has reached the age of sixteen. W. Va. Code § 49-4-604(c)(5). K.T. specifically argues that the children have achieved permanency by being placed with their respective non-offending parents and this arrangement could continue without terminating the petitioners' parental rights. This argument fails to acknowledge that "simply because one parent has been found to be a fit and proper caretaker for his/her child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). The circuit court concluded that the petitioners' failure to demonstrate "any significant change in their substance use behavior throughout the proceedings" along with their insistence that

---

[15] *See In re B.W.*, 244 W. Va. 535, 536, 854 S.E.2d 897, 898 (2021) ("the circuit court ordered what is commonly called a 'section 5' disposition under West Virginia Code § 49-4-604(c)(5)").

they "should be permitted to continue their use of [cannabis]" resulted in their failure to "adequately acknowledge how their substance abuse has negatively affected their parenting skills and their relationship with their children."

Accordingly, we find no merit to the petitioners' arguments that the circuit court erred by terminating their parental rights.

For the reasons set forth above, we find no error in the decision of the circuit court, and its May 16, 2023 order is hereby affirmed.

Affirmed.

**ISSUED:** March 5, 2025

**CONCURRED IN BY**:
Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV